# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 10-4168

JOHN F. CAMERON, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 26, 2012                                      Decided November 28, 2012)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Mark D. Gore*, with whom *Leslie C. Rogall*, Deputy Assistant General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Will A. Gunn*, General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and MOORMAN and DAVIS, *Judges*.

DAVIS, *Judge*: Attorney John F. Cameron appeals through counsel a September 10, 2010, Board of Veterans' Appeals (Board) decision that determined that he was not entitled to payment of attorney fees from past-due benefits awarded to veteran Cathleen Golden after the VA regional office (RO) granted her claim for an increased disability rating[1] for service-connected major depression. An underlying issue in this appeal is whether the claim for an increased disability rating was part of Ms. Golden's overall "case" – as that term is used in 38 U.S.C. § 5904(c)(1) – such that it was part of her initial claim for benefits for major depression, which was (and is) still on appeal and has not yet become final. This issue is the primary basis for convening a panel to decide this appeal. For the reasons that follow, the Court concludes that the term "case" as used in section 5904(c)(1) refers

---

[1] A claim for increased disability rating is also interchangeably referred to as a claim for increased benefits. *See Vazquez -Flores v. Shinseki*, 24 Vet.App. 94, 96 n.3 (2010) ("An increased-rating claim is the same as a claim for increased benefits and the terms [can be] used interchangeably . . . .").

to a a claim submitted by a claimant and adjudicated by the Secretary, including the adjudication of all elements and theories in support of such claim, but it does not include an additional claim for benefits that is presented after the final adjudication of an earlier claim, with new, different, or additional evidence even if the additional claim is related to the disability underlying the earlier claim. We further hold that Ms. Golden's claim for an increased disability rating was a stand-alone claim, adjudicated separately and independently from her initial claim for benefits, and we conclude that the Board properly determined that Mr. Cameron was not entitled under section 5904(c)(1) to a portion of the past-due benefits awarded to Ms. Golden in the decision granting her increased-rating claim. Accordingly, the Court will affirm the Board decision on appeal.

## I. FACTUAL BACKGROUND

### A. The Initial Claim

In a May 13, 1996, rating decision, Ms. Golden was originally granted service connection for major depression without psychotic features and assigned a noncompensable disability rating effective January 25, 1996. She filed a Notice of Disagreement (NOD) on March 12, 1997, disputing the assigned disability rating. She also appears to have submitted new evidence on March 12, 1998.

On May 27, 1999, the regional office (RO) granted an increase in the initial disability rating to 30%, effective July 25, 1996. Ms. Golden disputed the effective date for that 30% disability rating. In a subsequent rating decision, the RO confirmed the 30% disability rating but granted an earlier effective date of May 10, 1995. Ms. Golden appealed to the Board, and on February 13, 2001, the Board denied entitlement to an increase in the initial disability rating. On June 27, 2001, Ms. Golden filed a motion for Board reconsideration of the February 2001 decision. Three years later, on August 3, 2004, the Board chairman denied Ms. Golden's motion for Board reconsideration.

On November 3, 2004, Ms. Golden appointed Mr. Cameron as her attorney and they executed an attorney-client fee contract, agreeing that Mr. Cameron would "provide legal services in connection with an appeal to the U.S. Court of Appeals for Veterans Claims . . . and in connection with all proceedings for benefits before the U.S. Department of Veterans Affairs." Record (R.) at 1582. The contract further stipulated that Ms. Golden would pay Mr. Cameron, on a contingent-fee basis, 20% of the total amount of any past-due VA benefits awarded. Id.

2

Also on November 3, 2004, Ms. Golden appealed the February 13, 2001, Board decision to the Court. After extensive litigation over the timeliness of her appeal, the Court determined that Ms. Golden's NOA was timely filed. *Golden v. Shinseki*, No. 04-1385 (May 18, 2012) (order). The Court has not yet rendered a decision on the merits of that appeal. *Golden v. Shinseki*, U.S. Vet.App. No. 04-1385.

## B. The Increased Rating Claim

On April 11, 2001, two months before Ms. Golden filed her motion for reconsideration of the Board's February 2001 decision, she sought treatment for her service-connected depression at the Tuskegee, Alabama, VA medical center (VAMC).[2] After what appears to be an absence of any recognition by the Secretary that Ms. Golden's treatment constituted a claim for increased benefits, *see* 38 C.F.R. § 3.157(b) (2012) (providing that a VA examination or hospital report can constitute an informal claim for increased benefits or to reopen a denied claim), on November 9, 2004, Ms. Golden notified the RO through counsel that she wanted to "re-open her claim for an increased rating for her service-connected depression." R. at 782-83. In June 2007, Ms. Golden submitted through her attorney a further notice to the RO, stating that "[i]n April 2001, Ms. Golden filed a claim for an increased rating for her service-connected depression. In November 2004, Ms. Golden filed a second claim for an increased rating for her service-connected depression." R. at 791. In July and August of 2007, Ms Golden submitted further notice through her attorney to the RO, indicating that the RO failed to adjudicate Ms. Golden's claim for an increased rating.

In February 2008, Ms. Golden, through her counsel, Mr. Cameron, filed a petition for extraordinary relief in the nature of a writ of mandamus with the Court, asking the Court to compel the RO to adjudicate Ms. Golden's claim for an increased disability rating for major depression. The petition asserted that "Ms. Golden's new April 2001 and November 2004 claims are *completely separate* from the prior final claim and appeal decided in the February 2001 Board decision [based on 'new medical evidence']." R. at 740 (emphasis added). On May 21, the Secretary responded, noting that the RO had adjudicated the claim for an increased rating on May 14, 2008. Accordingly, the Court dismissed Ms. Golden's petition as moot.

---

[2] On June 27, 2001, Ms. Golden filed a motion for reconsideration of the Board's February 2001 decision, and three years later on August 3, 2004, the Board Chairman denied her motion.

In the May 2008 decision, the RO granted Ms. Golden a 100% disability rating for her service-connected major depression, effective the date of her hospitalization at the Tuskegee VAMC on April 11, 2001. Ms. Golden nevertheless believed that she was entitled to an earlier effective date and appealed the RO decisions to the Board in a July 11, 2008, Notice of Disagreement (NOD). On September 10, 2010, the Board denied Ms. Golden entitlement to an effective date earlier than April 11, 2001, for the award of a 100% disability rating for major depression.

### C. The Attorney-Fee Claim – the Matter on Appeal

The RO also determined in May 2008 that Mr. Cameron was not entitled to attorney fees based on the past-due benefits awarded to Ms. Golden resulting from her claim for increased benefits. Mr. Cameron appealed the RO decision to the Board in a May 23, 2008, NOD.[3] On September 10, 2010, the same day it decided Ms. Golden's claim for increased benefits, the Board determined that Mr. Cameron was not entitled to attorney fees from the past-due benefits awarded as a result of Ms. Golden's claim for an increased disability rating. R. at 3-16. The Board concluded that Ms. Golden's claim for increased benefits for her major depression was a separate claim from her earlier, initial claim for benefits for her depression.

In supporting its determination that Ms. Golden's case history consisted of two separate claims, the Board cited section 5904(c)(1) and summarized relevant caselaw from the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). The Board noted that the cases relied on by Mr. Cameron, *Stanley v. Principi*, 283 F.3d 1350 (Fed. Cir. 2002), and *Carpenter v. Nicholson*, 452 F.3d 1379, 1384 (Fed. Cir. 2006), were both distinguishable from Mr. Cameron's claim. The Board concluded that "[h]ere the service member's claim for an increased disability rating was a totally new claim" and "not a downstream issue arising or emanating from the RO's initial grant of service connection." R. at 12. Benefits were not awarded on the basis of a claim "emanating from a final decision by the Board," and therefore, the Board found that no attorney fees were owed from the past-due benefits awarded as a result of the claim for an increased rating. R. at 13. That decision is the one now on appeal.

---

[3] Ms. Golden's position with regard to Mr. Cameron's argument that he is entitled to a portion of her past-due benefits is not clear from the briefs.

## II. RELEVANT STATUTES

In November 2004 when Mr. Cameron and Ms. Golden entered into the attorney fee agreement, section 5904(c)(1) of title 38, U.S. Code, provided:

> Except as [otherwise] provided, in connection with a proceeding before the Department with respect to benefits under laws administered by the Secretary, a fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided *before the date on which the Board of Veterans' Appeals first makes a final decision in the case*. Such a fee may be charged, allowed, or paid in the case of services provided after such date *only if an agent or attorney is retained with respect to such case before the end of the one-year period beginning on that date*. The limitation in the preceding sentence does not apply to services provided with respect to proceedings before a court.

(emphasis added).

However, the current version of 38 U.S.C. section 5904(c)(1), which was amended on December 22, 2006, provides:

> Except as [otherwise] provided, in connection with a proceeding before the Department with respect to benefits under laws administered by the Secretary, a fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided *before the date on which a notice of disagreement is filed with respect to the case*. The limitation in the preceding sentence does not apply to fees charged, allowed, or paid for services provided with respect to proceedings before a court.

(emphasis added). The 2006 amended version is effective for NODs filed after June 19, 2007. *See* 38 C.F.R. § 14.636 (2012); *see also* 2006 Acts, Pub. L. No. 109-461, tit. I, sec. 101(h), 120 Stat. 3408.

As the emphasized language above indicates, the 2006 amendment changed the language of the statute from "date on which the Board first makes a final decision in the *case*" to "date on which a notice of disagreement is filed with respect to the case." (emphasis added). The 2006 amendment further struck out the restriction allowing a fee only when an attorney was retained with respect to the "case" before the end of the one-year period beginning on the date the Board first made a final decision in the "case"; however, the amendment substituted a restriction disallowing a fee for services rendered on a case before an NOD is filed and providing that the change applies only for cases where the NOD was filed after June 19, 2007.

5

In short, with respect to an attorney's work on "a case," prior to the 2006 amendment the attorney must have been retained within a year after the date of the first final Board decision in the "case" to be entitled to fees, unless the attorney was retained with respect to proceedings before a court. After the 2006 amendment the attorney must have been retained after the claimant filed an NOD, (after June 19, 2007), unless the attorney was retained with respect to proceedings before a court.

## III. ARGUMENTS AND ISSUES

Mr. Cameron argues that the 2004 version of section 5904(c)(1) applies to his work representing Ms. Golden because he and Ms. Golden entered into a fee agreement on November 3, 2004, when that version of the statute was in effect. Because his representation of Ms. Golden commenced in a proceeding before the Court, Mr. Cameron argues that he meets the eligibility requirements section 5904(c)(1). He asserts that the statute has two triggering events, either of which is independently sufficient: that an attorney be retained within one year of a first final Board decision, or that an attorney be retained with respect to proceedings before a court. He maintains that the second triggering event is applicable here. Specifically, he notes that he was retained in November 2004 to represent Ms. Golden in her November 2004 appeal to the Court of the February 2001 Board decision.

In key support of his argument, Mr. Cameron also contends that Ms. Golden has had only one "case" before VA, which includes *anything* related to Ms. Golden's service-connected major depression. He maintains that Ms. Golden's original claim for benefits for service-connected major depression did not become a different "case" when a claim for an increased rating was later filed with the RO. Rather, he relies on, inter alia, *Carpenter*, *supra*, as support for his assertion that, because Ms. Golden's claims are factually related to benefits for major depression, they are part of the same "case" and both claims are included under the attorney-client fee agreement filed with the Court on November 3, 2004.

The Secretary agrees that Ms. Golden had two claims before VA: an original claim for disability benefits, for which she was granted service connection for major depression, and a later, informal claim for an increased rating for her service-connected major depression without psychotic

6

features, which arose when she was hospitalized at a VAMC in April 2001. Relying, inter alia, on *Stanley, supra*, the Secretary does not agree, however, that these two claims constitute one "case" for purposes of section 5904(c)(1). The Secretary notes that the past-due benefits award derived from the April 2001 VAMC hospitalization occurring after the February 2001 Board decision, did not arise from the same nucleus of facts that formed the basis for the original grant of service connection for major depression and the assignment of the initial 30% disability rating.

In essence, the Secretary argues that for purposes of section 5904(c)(1) Mr. Cameron's attorney fee agreement related only to Ms. Golden's initial claim for benefits and the adjudication of that "case"; it did not relate to Ms. Golden's separate claim for increased benefits. The Secretary further argues that the Board therefore did not err in denying Mr. Cameron attorney fees under the pre-2006 version of section 5904(c)(1), and that the post-2006 version of that statute applies because Ms. Golden filed her NOD in July 2008, well past the June 19, 2007, effective date of the amended section 5904(c)(1), and, because Ms. Golden was awarded a 100% disability rating effective April 11, 2001, in an initial RO decision rendered in May 2008, Mr. Cameron was not entitled to attorney fees for work helping Ms. Golden receive that award because all work was done prior to the July 2008 NOD filed in that case. In sum, the Secretary argues that the Board correctly decided that Mr. Cameron was not eligible for payment of attorney fees from past-due benefits awarded in the May 2008 RO decision.

## IV. ANALYSIS

There is no dispute that Ms. Golden has two claims: (1) Her initial claim for benefits for major depression which was granted in 1996 and which is on appeal at the Court even today with regard to the assigned initial disability rating, and (2) her subsequent claim for increased benefits that arose with her hospitalization in 2001, which also is on appeal at the Court with regard to an earlier effective date. The key question before the Court is whether these two claims constitute one "case" for purposes of section 5904(c)(1).

### A. Carpenter *and* Jackson

Mr. Cameron argues that *Carpenter, supra*, demonstrates that Ms. Golden's two claims constitute a single "case." In *Carpenter*, the Federal Circuit held that the Court erred in "construing

7

[the veteran's] 'case' in section 5904(c) to exclude the legal services rendered after the veteran's claim had been denied." *Id.* at 1384-85. The Federal Circuit noted that there were various issues throughout the proceedings, but that these issues did not become different "cases" and did not require separate fee agreements "at each stage of the often lengthy and complex proceedings, including remands as well as reopening." *Id.* at 1384 (a case "encompasses 'all potential claims raised by the evidence'" (quoting *Roberson v. Principi,* 251 F.3d 1378, 1384 (Fed. Cir. 2001))).

As the Board noted, *Carpenter* is distinguishable from the facts of Ms. Golden's case history for several reasons. First, *Carpenter* involved continuous prosecution of a single claim for an increased rating and then the effective date for the awarded increased rating. While the prosecution occurred at different stages–before the RO, the Board, and the Court–it flowed from the original appeal of the denial of an increased rating. Ms. Golden's case history, by contrast, involves an initial claim for service connection for depression and anxiety and the initial award of benefits, and then a later informal claim for an increased rating of the service-connected disability stemming from her hospitalization after the Board decision concerning her initial claim. Second, *Carpenter* indicates that a "case" "encompasses 'all potential claims raised by the evidence.'" *Id.* at 1384 (quoting *Roberson*, *supra*). Read in context, the definition of "case" relates to all potential claims raised by the evidence during the processing of the claim in question. In Ms. Golden's case, the RO in May 2008, relied on VAMC records from her April 2001 hospitalization, the basis of her informal claim, to grant her increased disability rating of 100%. Those records did not exist when the Board issued its February 13, 2001, decision that denied entitlement to a disability rating higher than 30% for major depression, and they have not been – and still are not – relevant in the subsequent appeal of that Board decision that is still pending. *See* 38 U.S.C. § 7252(b); *Rogozinski v. Derwinski*, 1 Vet.App. 19, 20 (1990) (holding that review in this Court shall be on the record of proceedings before the Secretary and Board).

Third, and in contrast to *Carpenter*, Ms. Golden's two claims were an initial claim for an award of benefits, and a later informal claim for an increased rating for a service-connected disability. These are distinct claims, as recognized even by statute. *See* 38 U.S.C. § 5103(a)(2)(B)(i) (stating that contents of notice shall be different "based on whether the claim concerned is an original claim . . . or a claim for an increase in benefits); 38 U.S.C. § 5110(a) (stating that the effective date

8

"of an award based on an original claim . . . or a claim for increase . . . shall be fixed in accordance with the facts found . . .").

Moreover, we find the Federal Circuit's decision in *Jackson v. Shinseki*, 587 F.3d 1106 (Fed. Cir. 2009), to be instructive, if not controlling. In *Jackson*, the Federal Circuit determined that the attorney, Mr. Jackson, did not qualify for past-due attorney fees from work leading to the veteran's award made by the RO of a total disability rating for individual unemployability (TDIU), where the original case did not include the TDIU matter. In that case, the RO increased to 40% the disability rating for the veteran's low-back disability. While the RO was considering the veteran's claim for an increased rating for a low-back disability, the veteran filed a separate claim for service connection for a depressive disorder, which was granted. His attorney contacted the RO about TDIU benefits based on the depressive order, and the RO subsequently granted entitlement to TDIU. Mr. Jackson filed a claim for part of the veteran's past-due TDIU benefits, alleging that he was acting in accordance with a fee agreement. However, the RO determined that Mr. Jackson was not eligible for attorney fees under the pre-2006 version of 38 U.S.C. § 5904(c), because the decision awarding TDIU had not been the subject of a final Board decision, and the Board affirmed. On appeal, the Court rejected Mr. Jackson's argument that the matter of TDIU "was reasonably and inherently related to [the veteran's] increased rating claim for lower back disorder," and reasoned that, although the veteran's first case involved a claim for an increased rating and he submitted evidence of a disability, he did not submit evidence of unemployability, which served as the basis for awarding TDIU. *Id*. at 1109.

Mr. Jackson appealed to the Federal Circuit, which affirmed the Court's decision. The Federal Circuit determined that the matter of TDIU was not part of the veteran's earlier "case," within the meaning of 38 U.S.C. § 5904(c)(1). *Id*. at 1111. The Federal Circuit reasoned that, because evidence of unemployability had not been submitted along with the veteran's claim for an increased rating for a back disability, but rather had been submitted to the RO as part of the second "case" that was not the subject of a Board decision, Mr. Jackson was not entitled to collect attorney fees for his representation of the veteran before the RO with regard to TDIU. *Id*. at 1109-10.

Here, as in *Jackson*, the appellant argues that Ms. Golden's claim for an increased rating was a "downstream issue" related to the appeal of the initial disability rating assigned to the veteran's

service-connected disability. However, as in *Jackson*, the claim for an increased disability rating was a separate "case" within the meaning of § 5904(c)(1) because it involved evidence that was not part of her original claim and the 2001 Board decision that remains on appeal. Specifically, the April 11, 2001, treatment record that served as the basis for the May 2008 increased disability rating was not considered by the RO or the Board in the first "case" because it did not then exist, and it is not part of that case, which remains on appeal. *See Jackson v. Nicholson*, 19 Vet.App. 207, 210 (2005) ("[O]nce a Board disallows a claim, the Board's decision is final . . . any evidence submitted after the Board decision with respect to the claim will be considered an attempt to reopen the disallowed claim based on new and material evidence."), *aff'd*, 449 F.3d 1204 (Fed. Cir. 2006); *Rogozinski*, *supra*. Moreover, although a claim for an increased rating (such as the TDIU claim in *Jackson*) "directly relate[s] to and stem[s] from the veteran's service connection claim," it contains a separate essential element from an initial service-connection claim: an increase in the level of disability that occurs after the record before the Board has closed. Thus, Ms. Golden's two claims constitute two distinct "cases" for purposes of section 5904(c)(1).

## V. CONCLUSION

Because Ms. Golden's April 11, 2001, informal claim for increased benefits constituted a separate "case" for purposes of section 5904(c)(1) and the legal services were rendered before an NOD was filed on that claim, we agree with the Secretary that the Board correctly determined that Mr. Cameron is not entitled to attorney fees for work performed in aiding Ms. Golden with regard to her claim for increased benefits and helping her secure past-due benefits awarded in the May 2008 RO decision on that claim. For purposes of section 5904(c)(1), the attorney-client agreement entered into in November 2004 related to Ms. Golden's initial award of benefits in May 1996, and all elements of that claim and any theories in support of that claim, which constituted Ms. Golden's first "case," which remains on appeal; the agreement does not, however, entitle the attorney to payment for work performed on Ms. Golden's second claim – for increased benefits based on the informal April 2001 claim – which constitutes a separate "case" for purposes of section 5904(c)(1). Accordingly, we hold that the Board correctly denied Mr. Cameron's claim for attorney fees pursuant to the pre-2006 version of section 5904(c)(1).

Moreover, because an NOD with regard to Ms. Golden's second claim was not filed until July 2008, any potential award of attorney fees is governed by the post-2006 amended version of section 5904(c)(1). Pursuant to that version of the statute, any work assisting Ms. Golden in the adjudication of that "case" that was performed before her NOD was filed in July 2008 could not form the basis for entitlement to attorney fees.

On consideration of the foregoing, the September 10, 2010, Board decision is AFFIRMED.