NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALLEN GUMPENBERGER,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1887

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-4155, Judge Grant Jaquith, Judge Joseph L. Falvey, Jr, Judge Michael P. Allen.

---

Decided:  March 25, 2024

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

BRITTNEY M. WELCH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, BORISLAV KUSHNIR, PATRICIA M. MCCARTHY; SHEKEBA MORRAD, CHRISTA A. SHRIBER, Office of General Counsel,

United States Department of Veterans Affairs, Washington, DC.

———————————

Before PROST, STOLL, and STARK, *Circuit Judges*.

STOLL, *Circuit Judge*.

This case is about attorney or agent fees. Allen Gumpenberger, an agent, seeks fees for his representation of veteran Arturo Valadez. Specifically, Mr. Gumpenberger seeks fees for past-due benefits the Department of Veterans Affairs (VA) awarded Mr. Valadez for his traumatic brain injury (TBI). The Board of Veterans' Appeals denied Mr. Gumpenberger's request for fees under 38 U.S.C. § 5904(c)(1) (2012) and the United States Court of Appeals for Veterans Claims affirmed. *Gumpenberger v. McDonough*, 35 Vet. App. 195 (2022) (*Decision*). We agree with the Veterans Court's interpretation of the fee statute, and thus affirm.

## BACKGROUND

Mr. Valadez served honorably in the United States Marine Corps and has received VA benefits for many conditions related to his service. In June 2010, Mr. Valadez and Mr. Gumpenberger entered into a fee agreement of "20 percent of all past due benefits awarded to [Mr. Valadez] as a result of winning [his] appeal." J.A. 30. This agreement "relates to any and all services provided on [Mr. Valadez's] behalf . . . with respect to an appeal . . . where a notice of disagreement was filed." *Id.*

In July 2010, Mr. Gumpenberger filed the fee agreement with the VA and sought to establish service connection for TBI and entitlement to individual unemployability (TDIU) for Mr. Valadez. In April 2013, a VA regional office (RO) issued a rating decision granting Mr. Valadez a 70% disability rating for TBI, as well as several TBI residuals, and denying entitlement to TDIU. The RO denied TDIU because Mr. Valadez was "considered capable of obtaining

and maintaining gainful employment." J.A. 53. In May 2013, the RO sent Mr. Valadez a letter confirming the 70% disability rating for his service-connected TBI, granting service connection for other conditions like migraine headaches, and denying service connection for his acquired psychiatric disorder to include major depressive disorder and depression with alcohol dependence.

Mr. Gumpenberger then filed a notice of disagreement (NOD) for Mr. Valadez to appeal the denial of (1) entitlement to TDIU and (2) service connection for acquired psychiatric condition. In August 2014, the RO issued a statement of the case listing TDIU and the service connection for acquired psychiatric condition as the only two issues on appeal. In October 2014, Mr. Gumpenberger completed Mr. Valadez's appeal by filing a VA Form 9. Then, in December 2015, Mr. Gumpenberger wrote to the VA that Mr. Valadez is "seeking entitlement to [TDIU] from July 27, 2010, to resolve all issues on appeal." J.A. 111. And because "the symptoms of psychiatric impairments greatly overlap symptoms of TBI, at this point [Mr. Gumpenberger is] withdrawing that issue from appeal." J.A. 111.

About seven months later, in July 2016, the VA informed Mr. Valadez, cc'ing Mr. Gumpenberger, that it was conducting a special review of TBI examinations in support of disability compensation claims for TBI. "This review revealed a number of initial TBI exams that were not conducted by a neurologist, psychiatrist, physiatrist, or neurosurgeon," including Mr. Valadez's initial TBI exam. J.A. 112. The VA therefore offered Mr. Valadez the option of undergoing a new TBI exam by an appropriate specialist. Under this option, the VA could reprocess Mr. Valadez's

prior TBI claim.  Mr. Valadez requested reprocessing under the VA's special TBI review.[1]

Subsequently, in September 2016, the VA assigned a 100% schedular evaluation for Mr. Valadez's TBI effective from July 27, 2010.  The VA also granted Mr. Valadez special monthly compensation based on housebound criteria and eligibility to Dependents' Educational Assistance, effective from July 27, 2010.  The evidence the VA considered was: (1) a VA 21-0820 Report of General Information, received on July 26, 2016; (2) a VA letter concerning Mr. Valadez's exam, dated July 29, 2016; and (3) a DBQ NEURO TBI Initial, received on August 16, 2016.

Mr. Gumpenberger sought fees from the September 2016 rating decision that increased TBI rating from 70% to 100%.  The RO denied fees, noting that Mr. Gumpenberger specifically withdrew TBI from Mr. Valadez's appeal and that Mr. Valadez's TBI claim was reprocessed per Secretary of Veterans Affairs authority to reward equitable relief.[2]  The RO reasoned that the

---

[1]    In the briefing before our court, Mr. Gumpenberger states that he requested reprocessing of Mr. Valadez's claim under the special TBI review.  Appellant's Br. 4 (citing J.A. 114).  The Veterans Court and Board, however, describe the *veteran* as responding to the VA's letter.  J.A. 3 (Veterans Court), 175 (Board).  Also, during oral argument before the Veterans Court, Mr. Gumpenberger's attorney could not point to anything that Mr. Gumpenberger did to assist Mr. Valadez in obtaining an increase in schedular rating for TBI.  We recite the facts as stated by the Veterans Court.

[2]    The Veterans Court recognized that Mr. Gumpenberger "expressly withdrew the issue of the veteran's *psychiatric claim* from the appeal, not TBI, which [Mr. Gumpenberger] did not include in his NOD." *Decision*, 35 Vet. App. at 200 n.15 (emphasis added).

"resultant favorable decision [was] not due to an appeal, so direct payment of fees [was] denied." J.A. 136. Mr. Gumpenberger filed a NOD, explaining that the VA misinterpreted his withdrawal letter and that the issue of an increase in evaluation to total was still on appeal. The RO issued a statement of the case, continuing to deny entitlement to a fee. Mr. Gumpenberger then appealed to the Board.

The Board concluded that fees were not warranted. The Board reasoned that no NOD was filed for TBI, the evaluation for TBI was "based on the VA's own internal review of TBI examinations," and a grant of a 100 % for TBI is not the same as a grant of TDIU in this case, which was what was sought in the NOD. J.A. 176. Mr. Gumpenberger then appealed to the Veterans Court.

The Veterans Court affirmed the Board's decision. *Decision*, 35 Vet. App. at 199. The court began by recognizing that both parties agree 38 U.S.C. § 5904(c)(1) (2012) applies. *Id.* at 203. That statute states:

> (c)(1) Except as provided in paragraph (4), in connection with a proceeding before the Department with respect to benefits under laws administered by the Secretary, a fee may not be charged, allowed, or paid for services of agents and attorneys *with respect to services provided* before the date on which a *notice of disagreement* is filed with *respect to the case*. The limitation in the preceding sentence does not apply to fees charged, allowed, or paid for services provided with respect to proceedings before a court.

§ 5904(c)(1) (2012) (emphases added). The Veterans Court analyzed the scope of a NOD under 38 U.S.C. § 7105 and 38 C.F.R. § 20.201, general provisions governing NODs, before turning to 38 U.S.C. § 5904(c)(1) and the phrase "with respect to the case." *Decision*, 35 Vet. App. at 203–11.

In interpreting 38 U.S.C. § 5904(c)(1), the Veterans Court acknowledged that it was "not writing on a blank slate." *Id.* at 208. It relied on a Veterans Court case, *Cameron v. Shinseki*, 26 Vet. App. 109 (2012), *aff'd*, 561 F. App'x 922 (Fed. Cir. 2014), as well as *Carpenter v. Nicholson*, 452 F.3d 1379 (Fed. Cir. 2006) and *Jackson v. Shinseki*, 587 F.3d 1106 (Fed. Cir. 2009). *Decision*, 35 Vet. App. at 208–09. The Veterans Court held that, in this matter, the schedular rating for TBI and TDIU are separate cases. The NOD Mr. Gumpenberger filed defined the "case" and, here, the award of a 100% schedular rating for TBI—which was the result of the VA's independent review of TBI cases—was not related to the development of the appeal for TDIU. *Id.* at 209–11. Additionally, the Veterans Court "cannot help but note that [Mr. Gumpenberger] fails to establish what, if any, services he provided as it relates to the award of the veteran's TBI schedular rating." *Id.* at 211.

Mr. Gumpenberger appeals. We have jurisdiction under 38 U.S.C. § 7292(a),(c).

## DISCUSSION

Our review is limited by statute. We may only review decisions of the Veterans Court related to the interpretation of constitutional and statutory provisions. 38 U.S.C. § 7292(c). Unless a constitutional issue is presented, we lack jurisdiction to review questions of fact or the application of law to fact. *Id.* § 7292(d)(2). We review legal determinations of the Veterans Court de novo. *Blubaugh v. McDonald*, 773 F.3d 1310, 1312 (Fed. Cir. 2014).

The sole issue raised by Mr. Gumpenberger on appeal is whether the Veterans Court erred in its interpretation of the phrase "the case" in 38 U.S.C. § 5904(c)(1) (2012). Specifically, whether the Veterans Court erred in interpreting § 5904(c)(1) when it decided that Mr. Gumpenberger is not entitled to fees for Mr. Valadez's increased schedular rating of TBI because the NOD he filed did not encompass a

TBI rating claim and thus the TBI rating claim was not part of "the case." We hold that the Veterans Court did not err.

We begin with a brief history of restrictions on agents' and attorneys' fees for VA benefits claims, as well as our caselaw. "Congress has thrice changed the triggering event for when attorneys' fees may be charged, each time shifting the entry point for such fees—and thus a claimant's ability to retain paid representation—earlier in the administrative appeals process." *Mil.-Veterans Advoc. (MVA) v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1135 (Fed. Cir. 2021). Section 5904(c)(1)'s predecessor permitted attorneys' fees only after a Board made a final decision in the case. *See id.* (citing 38 U.S.C. § 3404(c)(1) (1988)). In this way, the statute "intended to 'preserve the non-adversarial initial benefits process, while providing the veteran with the assistance of an attorney when that process has failed and the veteran is faced with the complexities of appealing, reopening, and/or correcting prior adverse decisions.'" *Id.* at 1135–36 (quoting *Carpenter*, 452 F.3d at 1383).

In 2006, Congress amended § 5904(c)(1) to shift the triggering event from a final Board decision to filing a NOD. *See* § 5904(c)(1) (2006). Thus, the amended statute expanded a claimant's ability to retain representation of an unsatisfactory initial decision by the RO. *See* 152 Cong. Rec. H8981, at H9018 (2006) (Rep. Miller) ("Unfortunately, the claims process has become very complex and can be very overwhelming to some claimants. This provision would give veterans the option of hiring an attorney earlier in the process if the veterans believe they need assistance with their claim.").

Later, Congress shifted the triggering event for § 5904(c)(1) to allow paid representation after a claimant receives "notice of the agency of original jurisdiction's initial decision." *See* § 5904(c)(1) (2017). We have acknowledged that such "shift was part of a continuing

congressional effort to enlarge the scope of activities for which attorneys can receive compensation for assisting veterans." *MVA*, 7 F.4th at 1136.

At issue here is the 2012 version of § 5904(c)(1) which specifies the filing of a NOD as the triggering event for when fees may thereafter be awarded. Our caselaw on § 5904(c)(1)'s predecessor—which has a later triggering event in the claims process—guides our understanding of the statutory language at issue here.

In *Carpenter*, we addressed the meaning of the "in the case" in the context of the pre-2006 § 5904(c)(1). The VA originally awarded the veteran there 100% disability rating for service-connected thrombophlebitis. *Carpenter*, 452 F.3d at 1380. Later, the RO reduced the disability rating and the veteran sought to reestablish the total disability rating on the ground that his condition prevented him from obtaining employment, i.e., he sought TDIU. *Id.* In 1990, after various proceedings, the Board denied the veteran's request and he sought representation by counsel, Mr. Kenneth M. Carpenter. *Id.* at 1380–81. Mr. Carpenter appealed the 1990 Board's decision to the Veterans Court which vacated the Board's decision for error. *Id.* at 1381. In 1993, on remand, the Board awarded the veteran 100% disability rating, but the RO assigned a later effective date. *Id.* Mr. Carpenter raised the issue of the effective date, eventually appealing the issue to the Board. *Id.* The Board accepted Mr. Carpenter's position such that the veteran obtained the 100% disability rate retroactive to and continuous from the initial, earlier effective date. *Id.* The veteran obtained complete relief. *Id.*

With respect to attorney's fees, the Board informed Mr. Carpenter that he was not entitled to a fee for services performed prior to the later, 1993 Board decision establishing the earlier effective date as that was the "first . . . final decision in the case." *Id.* at 1381–82. The Veterans Court agreed, rejecting the position that the "case" began when

the earlier, 1990 Board denied the veteran's claim for 100% disability.  We reversed.

Specifically, we clarified that a veteran's claim based on a specific disability does not become a different "case" at each stage of what are often lengthy and complex proceedings at the VA.  *Id.* at 1384.  We explained that "the degree of disability and the effective date of disability were issues within the same case, for the claim for benefits includes the issues emanating from the disability or injury that led to the claim."  *Id.*  Thus, the claim for an earlier effective date was part of the same "case" seeking the increased disability rating.  *Id.*

A few years later, in *Jackson*, we again addressed the interpretation of "in the case" in pre-2006 § 5904(c)(1).  The VA there granted the veteran a 40% rating for a lower back disorder and denied a supplemental claim seeking an increased rating and a new disability rating for a cervical spine disorder.  *Jackson*, 587 F.3d at 1107–08.  In 2000, after the Board rejected the veteran's requests, the veteran hired Mr. Francis M. Jackson to represent him.  *Id.* at 1108.  Mr. Jackson appealed to the Veterans Court, which vacated and remanded the Board's opinion.  On a subsequent remand, the veteran filed a separate claim for depressive disorder, which the RO eventually granted, assigning a 30% disability rating.  *Id.*  Mr. Jackson then inquired about qualifying for TDIU based on the depressive disorder.  *Id.*  The RO granted TDIU and Mr. Jackson sought fees for past-due benefits relating to TDIU.  *Id.*  The RO informed Mr. Jackson he was ineligible for those fees because the TDIU issue was not subject to a final Board decision, as required in § 5904(c).  *Id.*  The Board affirmed the RO's decision, noting that at the time of the 2000 Board decision (the triggering event) the evidence of record did not support a finding of unemployability, a necessary element of TDIU.  *Id.*  The Veterans Court affirmed.  We did too.

In *Jackson*, we stated: "This court has explained that a 'case' within the meaning of Section 5904(c) encompasses 'all potential claims *raised by the evidence*, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled . . . .'" *Id.* at 1109 (quoting *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001)). We explained that a TDIU claim may, under certain circumstances, necessarily encompass a veteran's claim for increased benefits even when not expressly raised. *Id.* But those circumstances were not present there. Because there was no evidence of unemployability before the Board's 2000 decision, i.e., no evidence to support a necessary part of a TDIU claim, TDIU was not part of the "case" at the time of the 2000 Board decision. *Id.* at 1109–10.

With that backdrop, we return to the statute at issue here, § 5904(c)(1) (2012). Unlike the pre-2006 § 5904(c)(1) statute—for which the triggering event is "the date on which the [Board] first makes a final decision in the case"—the triggering event for the statute here is "the date on which a [NOD] is filed with respect to the case." The triggering event changed, but our understanding of what constitutes "the case" has not. Both parties seem to agree that we could adopt the interpretations of the phrase "the case" in our pre-2006 § 5904(c)(1) caselaw.[3] We agree and see no

---

[3]    Mr. Gumpenberger refers to his interpretation of the "case" as consistent with the definition that encompasses "all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled." Appellant's Br. 22 (quoting *Carpenter*, 452 F.3d at 1384). The government cites the same definition of a "case" in its briefing but as quoted in *Jackson*. Appellee's Br. 15 (citing *Jackson*, 587 F.3d at 1109; *see* also Oral Arg. at 19:10–19:38, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=2 2-1887_03062024.mp3 (government attorney stating that

reason to depart from our prior interpretation of "the case" given the similarities between pre-2006 § 5904(c)(1) and the version of the statute at issue. Thus, the issue before us is whether the Veterans Court's interpretation of § 5904(c)(1) (2012) is consistent with our caselaw interpreting "the case" for pre-2006 § 5904(c)(1). Mr. Gumpenberger argues that the Veterans Court misinterpreted the statute "because the Veterans Court essentially abandoned the claimed understanding of the definition of the phrase 'with respect to the case.'" Appellant's Br. 24. We disagree.

The Veterans Court began its discussion of the meaning of "with respect to the case" in § 5904(c)(1) (2012) by recognizing that precedent provides context for how to interpret "the case." *Decision*, 35 Vet. App. at 208. The Veterans Court recognized, for example, that its decision in *Cameron* held that "the case" would include "all potential claims raised by the evidence during the processing of the claim in question." *Id.* at 208–09 (quoting *Cameron*, 26 Vet. App. at 115). The Veterans Court also considered both *Carpenter* and *Jackson*. The Veterans Court also found that "the 100% schedular rating for TBI was the result of VA's independent review of TBI cases and had nothing to do with the appeal of TDIU." *Id.* at 209–10. We lack jurisdiction to review this fact finding on appeal; nor have we been asked to review this fact finding.

We read the Veterans Court as following the interpretation of "the case" as set forth in *Jackson*. In *Jackson*, the necessary evidence for TDIU (the claim the attorney sought fees for) was missing at the time of the trigger event (the Board decision), meaning TDIU was not raised by the evidence at the time that the increased benefits claim was raised to the Board. Thus, TDIU was not part of "the case" in *Jackson*. So too here: the VA's independent review of

---

our court could adopt the definition of the "case" as used in *Jackson*).

TBI cases and resultant new medical examination evidence (which resulted in an increased schedular rating for TBI) was missing at the time of the triggering event, the filing of the NOD. *See Decision*, 35 Vet. App. at 209–10 ("[T]he 100% schedular rating for TBI was the result of VA's independent review of TBI cases and had nothing to do with the appeal of TDIU."); J.A. 115–22 (listing evidence the VA considered in the RO decision increasing the schedular rating of TBI, including a "DBQ NEURO TBI Initial" received in 2016). The increased schedular TBI rating was therefore not raised by the evidence at the time of the NOD and thus not part of "the case" for which Mr. Gumpenberger could be entitled to fees.

We recognize that while both parties encourage us to adopt the same interpretation of "the case" for the 2012 version of the fee statute as in our precedent. But each party nonetheless interprets "the case" and our caselaw differently.

Mr. Gumpenberger argues that there need only be "some connection" between the increased rating for TBI and entitlement to TDIU for the claims to be part of the same "case." Appellant's Br. 24–25. Here, Mr. Gumpenberger argues "some connection" exists because both an increase in TBI and entitlement to TDIU result in the same amount of compensation for Mr. Valadez. *Id.* This is not consistent with the interpretation of "the case" in our precedent. For example, in *Jackson*, we acknowledged that the TDIU claim was "directly related to and stemmed from" the veteran's service connection claim, meaning there was some connection. *Jackson*, 587 F.3d at 1110. But we held, "[n]otwithstanding that fact," Mr. Jackson was not entitled to attorney's fees for the TDIU claim. *Id.*

For its part, the government argues that whether two claims are part of "the case" depends on the claims' evidentiary requirements. Appellee's Br. 15. But *Jackson* foreclosed this argument. In *Jackson* we explained that "a TDIU claim *may* under certain circumstances necessarily

be encompassed in a veteran's claim for increased benefits despite not being expressly raised," but the circumstances there—with no evidence of a necessary component for TDIU—extinguished such possibility. *Jackson*, 587 F.3d at 1109–10 (emphasis added). The VA denied Mr. Jackson fees for the TDIU claim not because TDIU and the claim for increased benefits have different evidentiary *standards*, but because the evidence required for a TDIU claim was not present at the time of the triggering event. *See id.* at 1111 ("Because no evidence of [the veteran]'s unemployability was submitted before the Board's July 2000 decision[, the triggering event], the 'case' before the Board at that time did not include a claim for TDIU benefits and thus was not a compensable fee under Section 5904(c).").

We address the parties' interpretations of "the case" and understanding of our caselaw to make clear that we do not read the Veterans Court's opinion, which we affirm, as adopting either party's interpretation. While dissecting portions of the Veterans Court's opinion and reading it out of the context of its discussion of our caselaw might possibly support alternative interpretations of the meaning of "the case" for § 5904(c)(1) (2012), we must read the opinion as a whole. And reading the opinion as a whole and in context, we find the Veterans Court's interpretation consistent with our pre-2006 § 5904(c)(1) caselaw. Accordingly, we affirm.

## CONCLUSION

We have considered Mr. Gumpenberger's remaining arguments and find them unpersuasive. For the reasons above, we affirm.

## AFFIRMED

### COSTS

No costs.